UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TERRY M. BABB, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | Civil Action No. 05-cv-1088(RCL) |
| v. | ) | |
| | ) | |
| MICHAEL CHERTOFF, in his | ) | |
| official capacity as Secretary of | ) | |
| the Department of Homeland | ) | |
| Security, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR IN THE ALTERNATIVE MOTION TO AMEND THE COMPLAINT

Plaintiffs Terry M. Babb and the Federal Air Marshal Association, Inc., through counsel file their Opposition to Defendants' Motion to Dismiss and/or In the Alternative Motion to Amend the Complaint.  As further grounds, counsel would state:

### A.

### Nature of the Action

The plaintiffs brought this declaratory and injunctive relief action as a result of the defendants' actions during an investigation into alleged employee disclosures of purported sensitive/secure/classified information to members of the media which placed the defendants in an unfavorable public light; and the defendants' further actions as it applied to the unauthorized investigation of the Federal Air Marshal Association, Inc. (FAMA) and its President Terry M. Babb.  This action was also brought to declare illegal certain rules and regulations promulgated

and implemented by the Federal Air Marshal Service under ADM 3700, which plaintiffs alleged were facially unconstitutional.

The Federal Air Marshal Association joined in this action on behalf of members within the organization: (i) who were affected by ADM 3700; (ii) who were interrogated as part of the defendants' investigation; and (iii) who were compelled to disclose non-job related information about FAMA. Plaintiff Babb, who is employed as a Civilian Air Security Specialist (Federal Air Marshal), in the Department of Homeland Security, Federal Air Marshal Service, brought this action as a result of injuries suffered by him.

Since 2003, plaintiff Babb has served as the president of FAMA. **Comp. ¶5**. FAMA is a lawful organization comprised of active duty Federal Air Marshals (FAMS) and Federal Flight Deck Officers (FFDO). **Comp. ¶6** The goal of FAMA is to advance the professionalism, integrity, and mission effectiveness of both services without regard to political or bureaucratic agendas. *Id.* FAMA also provides a cogent voice for federal air marshals in communicating issues of public concern and other matters which pertain to the welfare of FAMA members to industry officials, members of Congress and other officials in the Executive Branch of government. *Id.* FAMA is not an extremist organization. As FAMA president, plaintiff Babb is responsible for providing a public voice for FAMA members with respect to their terms and conditions of employment; the health and safety of FAMA members; and as a public advocate for air travel safety. **Comp. ¶6**

At the time the plaintiffs filed the initial complaint, the controlling regulation in force was

ADM 3700.[1]   The plaintiffs premised their complaint on several of the provisions of ADM 3700, which plaintiffs alleged were unconstitutional both on their face and their application.  As noted, since July 26, 2005, ADM 3700 no longer exists.  However, the constitutional challenges to the practices of the defendants' internal affairs investigators was not abrogated by the rescission of ADM 3700 and the promulgation of OMS 3700.

On November 17, 2004, members of the defendants' Office of Professional Responsibility compelled a statement from plaintiff Babb.  During this interrogation, defendants' special agents warned plaintiff Babb that his failure to answer their questions could subject him to disciplinary and/or criminal action for interfering with or impeding an official investigation. **Comp. ¶42**.  Among other questions, defendants' special agents coerced plaintiff Babb to answer *non-work* related questions about:

      a.      the organizational structure of FAMA;

      b.      the identity of FAMA's Board of Directors;

      c.      the identity of current and past officers of FAMA;

      d.      the legal status of FAMA;

      e.      whether FAMA was an incorporated and the identity of the incorporator;

      f.      whether Babb sought permission from the defendants to organize FAMA and collect dues;

      g.      the membership types of FAMA and the respective cost of membership;

      h.      the dues structure of FAMA;

      I.      the number of members of FAMA; and

---

[1]     ADM 3700 was superceded by OMS 3700 on July 26, 2005.  OMS 3700 suffers from many of the same constitutional infirmities as its predecessor.

      j.      whether FAMA or its officials made public statements about the Federal Air Marshal Service.

**Comp. ¶43**.

Defendants' special agents did not have the legal authority to inquire into the operation of FAMA, the identity of its board of directors or any of the myriad of questions it asked about this lawful organization. **Comp. ¶46**. In the same vein, the actions of the defendants' special agents in compelling disclosure of information about FAMA under threat of administrative and criminal action against plaintiff Babb individually has a present and continuing chilling effect consisting of a present and future deterrence to members of FAMA: (i) in the active participation in the association; (ii) in FAMA's efforts to attract membership; (iii) to FAMA directors in performing association business and in pursuing lawful legitimate goals of the organization; and (iv) in conducting an annual election. **Comp. ¶ 44-50.**

The plaintiffs further challenged the defendants' established practice of threatening federal air marshals with administrative and criminal sanctions if they discuss the "nature" of the investigatory interview with "any other" person. **Comp. ¶52.** In other words, the plaintiffs complained of the defendants' established policy of prohibiting speech and sanctioning federal air marshals from discussing an investigation under threat of administrative and criminal sanctions with all individuals whether or not they are witnesses in the investigation. **Comp. ¶52-57**. Thus, the plaintiffs claim a violation of their rights under First Amendment to the United States Constitution.

## B.

## Dismissal Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

The Defendants' motion raises two procedural matters. The first involves dismissal of the complaint for lack of jurisdiction. The second matter pertains to defendants' Fed. R. Civ. P. 12(b)(6) argument for dismissal for failure to state a claim as to the substantive claim itself.

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002). Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003). As a result, the district court is not limited to the allegations contained in the complaint when adjudicating a motion under Rule 12(b)(1). *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). **Comp. ¶2**.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), on the other hand, challenges the adequacy of a complaint on its face, testing whether the sufficiency of a claim. *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 472 (D.C. Cir. 1991). Under 12(b)(6), a

5

court "does not test whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim." *Price v. Crestar Sees. Corp.*, 44 F. Supp.2d 351,353 (D.D.C. 1999).[2]  Thus, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

For the purposes of a Rule 12(b)(6) motion, all well-pleaded allegations are presumed to be true, and all doubts and inferences are resolved in the pleader's favor and drawn in the light most favorable to the pleader.  "To that end, the complaint is construed liberally in the plaintiffs' favor, and we grant plaintiffs the benefit of all inferences that can be derived from the facts alleged. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citations omitted); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C. Cir. 1979).  Thus, the plaintiffs need not plead the elements of a prima facie case in the complaint. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000).

In deciding the defendant's 12(b)(6) motion, the Court "may only consider the facts

---

[2]    Throughout most of the defendants' motion to dismiss, they assert that there is "no evidence" to support the plaintiffs' claim.  However, that argument is one properly reserved for summary judgment under Fed. R. Civ. P. 56, than one under Rule 12(b)(1) or (6).  The defendants' "no evidence" argument ignores Fed. R. Civ. P. 8 jurisprudence.  Rule 8's liberal pleading standard requires only "a short and plain statement of the claim showing that the pleader is entitled to relief,"  Fed. R. Civ. P. 8(a)(2), and courts are charged with construing the complaint "so as to do substantial justice," Fed. R. Civ. P. 8(f).  The "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). " 'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Id.* at 511 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F.Supp.2d 191 (D.D.C. 2002).

The distinctions between 12(b)(1) and 12(b)(6) are important and well understood. Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction, whereas 12(b)(6) presents a ruling on the merits with res judicata effect. *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256 (11th Cir. 1997)  The question of whether the plaintiff stated a claim upon which relief may be granted under the Constitution or laws of the United States does not affect the jurisdiction of the district court.

Because the claim arises under the laws of the United States, seeks "recovery directly under the Constitution or laws of the United States." See 28 U.S.C. §1343, and is neither "immaterial and made solely for the purpose of obtaining jurisdiction" nor "wholly insubstantial and frivolous," *Bell v. Hood*, 327 U.S. 678, 682-83 (1946), the district court has federal question jurisdiction pursuant to 28 U.S.C. Section(s) 1331. Accordingly, dismissal under Rule 12(b)(1) would, therefore, be erroneous.  *See St. Francis Xavier Parochial Sch*. *supra*.

## C.

### The First Amendment Speech Claims and Principles Raised in the Complaint

### 1.    <u>Content-based speech</u>

Content-based speech regulations are presumptively invalid.  *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992).  They survive constitutional review only if they promote a "compelling interest" and employ the least restrictive means to further the articulated interest. *See Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622 (1994)*;  Sable Communications of California, Inc.*

*v. FCC*, 492 U.S. 115, 126 (1989); *American Library Ass'n v. Reno*, 33 F.3d 78, 84 (D.C. Cir. 1994), *cert. denied*, 515 U.S. 1158 (1995).

Governmental action that falls short of a direct prohibition on speech may nevertheless violate the First Amendment by "chilling" the free exercise of speech. *Laird v. Tatum*, 408 U.S. 1, 11 (1972). As the Supreme Court has recognized, the threat of sanctions may deter the exercise of First Amendment rights almost as potently as the actual application of sanctions. *NAACP v. Button*, 371 U.S. 415, 433 (1963). Thus, plaintiffs challenging governmental action must assert "a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 14. The alleged threat of discipline up to dismissal directed at the plaintiffs is a concrete, particularized and imminent harm sufficient to satisfy this requirement. *See Levin v. Harleston*, 966 F.2d 85, 89 (2nd Cir. 1992) (holding that district court did not err in finding that an implicit threat of discipline was sufficient to create a judicially cognizable chilling effect on employee's First Amendment rights); *Trotman v. Board of Trustees of Lincoln University*, 635 F.2d 216, 228 (3rd Cir. 1980) (finding threats of discipline up to dismissal constituted state action subject to First Amendment scrutiny).

The Supreme Court has also established a two-step approach to evaluating a government employee's challenge to restraints on speech. As a threshold matter, the Court determines whether the speech in question addresses a matter of public concern. Matters of public concern are those of interest to the community, whether for social, political, or other reasons. *Connick v. Myers*, 461 U.S. 138, 145-49 (1983). If the speech addresses a matter of public concern, a court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public

services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Thus, once an employee demonstrates a judicially cognizable First Amendment interest in speech that addresses a matter of public concern, the burden is on the government to show that interest is "outweighed by that expression's 'necessary impact on the actual operation' of the Government." *United States v. National Treasury Employees Union*, 513 U.S. 454, 468 (1995) (quoting *Pickering*, 391 U.S. 563 at 571).

## 2.    Compelled Speech

As it pertains to compelled speech, the Supreme Court in various contexts has held that the government violates the First Amendment by compelling speech. *See, e.g., Riley v. National Fed. of the Blind*, 487 U.S. 781 (1988) (invalidating law requiring citizens to disclose certain facts connected with other protected activities); *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977) (invalidating law that required citizens to fund objectionable speech by others). For example, the Supreme Court has upheld challenges to state requirements that advocacy groups disclose membership lists, because such disclosure may deter citizens from associating with a controversial group. *See e.g., Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87 (1982); *Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539 (1963); *Bates v. Little Rock*, 361 U.S. 516 (1960); *NAACP v. Alabama*, 357 U.S. 449 (1958). Although these cases did not invalidate the laws under challenge, they did recognize a right to an exemption on the part of someone who could show a "'reasonable probability' that the compelled disclosure would result in 'threats, harassment, or reprisals from either Government officials or private parties.'" *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 379 (Scalia, J., dissenting) (quoting *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam).

3.    **Forbidden Speech**

The plaintiffs have further alleged that the defendants have threatened the plaintiffs and their members with discipline up to dismissal if they disclose the substance of their statements "with any other officer or with officers interrogated."  This is a content-based restriction on speech, and is therefore subject to "the most exacting" First Amendment scrutiny.  *See Boos v. Barry*, 485 U.S. 312, 321 (1988);  *Connick v. Myers*,  461 U.S. 138, 142 (1983) (holding that a government employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.").   Prior restraints in the form of rules or directives which seek to limit speech before it is made are viewed with a great deal of suspicion because they pose the risk of  self-censorship by speakers in order to avoid being denied a license to speak.  *See e.g.  Latino Officers Ass'n v. Safir*. 13 IER Cases 199 (S.D.N.Y.), *vacated on other grounds*, 170 F.3d 167 (2nd Cir. 1999); *Harmon v. City of New York*, 945 F.Supp. 750 (S.D.N.Y. 1996).  In addition, prior restraint regulations or directives make it more likely that an employee will be subject to sanctions after speaking because the employer will be more inclined to discipline an employee who has disregarded its order.  *Id.*

As it applies to internal investigations, the courts have spoken to agency instructions which direct a police officer not to discuss the subject of the investigation with other individuals. The regulations must be narrowly tailored to survive First Amendment scrutiny.  *See e.g. Los Angeles Police Protective League v. Gates*, 579 F.Supp. 36 (C.D. Cal. 1984).[3]

4.    **Freedom of Association**

Freedom of association, while not expressly mentioned in the Constitution, is protected as

---

[3]       The plaintiffs' position is that some investigative restrictions are valid.

a First Amendment right, under the Supreme Court's decision in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958). In that decision, which struck down an Alabama statute requiring disclosure of membership lists of the petitioning association, the Supreme Court recognized "that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the due process clause of the Fourteenth Amendment, which embraces freedom of speech." *Id*. at 460.[4]  *See also Marshall v. Allen*, 984 F.2d 787, 800 (7th Cir. 1993) ("[T]he right to freedom of association protects an individual's ability to associate with others for the purpose of propagating and expressing ideas and beliefs, including political, social, economic, educational, religious, and cultural concerns.").

In succeeding cases, the Supreme Court has found "constitutionally protected 'freedom of association' in two distinct senses." *Roberts v. United States Jaycees*, 468 U.S. 609, 617 (1984). One line of cases secures the individual freedom to "enter into and maintain certain intimate relationships," *id*., principally marriage and the family.  *Id.* at 618-20.

The second, and the one with which concerns the plaintiffs in the present case, recognizes "a right to associate for the purpose of engaging in . . . activities protected by the First Amendment," *id.* at 618, including speech.   The Court recognized that the right to association

---

[4]    The Court stated:

"It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute (an) effective . . . restraint on freedom of association . . .." Id. at 462, 78 S. Ct. at 1171.  Privacy is particularly important where the group's cause is unpopular; once the participants lose their anonymity, intimidation and suppression may follow. And privacy is important where the government itself is being criticized, for in this circumstance it has a special incentive to suppress opposition. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 777 n.11, 98 S. Ct. 1407, 1416, 55 L. Ed. 2d 707 (1978).

"encompasses the combination of individual workers together in order better to assert their lawful rights." *Dkt Memorial Fund Ltd., v. Agency For International Development,* 887 F.2d 275, 297 (D.C. Cir. 1989). Thus, the Supreme Court cases has expressly established that the government cannot constitutionally punish membership in or association with any organization, absent clear proof that a person specifically intends to accomplish the illegal aims of the organization, *see Scales v. United States*, 367 U.S. 203, 228-30 (1961); *Noto v. United States*, 367 U.S. 290, 299-30 (1961). Second, the government cannot constitutionally punish individual or group advocacy of any position, unless it amounts to incitement to lawless action, *see Bond v. Floyd*, 385 U.S. 116 (1966); *Yates v. United States*, 354 U.S. 298 (1957). And third, that lawful associations and their members have the right to be protected from facially legitimate government actions that would deter membership or otherwise thwart their efforts to associate and petition the government for redress of their grievances.

The first two principles at a minimum rendered absolutely unconstitutional any direct government interference with persons because they participated in organizations, if those organizations did not advocate violence or other lawless action, or because they held certain views, if those views were not accompanied by incitement to illegal action or a specific intent to accomplish illegal ends by force and violence. The third principle was not absolute, but made unconstitutional government action taken for legitimate purposes if it significantly interfered with protected rights of association, unless the government could demonstrate a substantial or compelling interest to justify the infringement, and that the interest could not more narrowly be accommodated. *NAACP v. Button*, 371 U.S. 415, 444 (1963) *Bates v. Little Rock*, 361 U.S. 516, 524 (1960)*; Shelton v. Tucker*, 364 U.S. 479, 488 (1960) ("In a series of decisions this Court has

12

held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved."). These principles leave no doubt that Government action, taken with the intent to disrupt or destroy lawful organizations, or to deter membership in those groups, is absolutely unconstitutional. *Hobson v. Wilson,* 737 F.2d 1 (D.C. Cir. 1984), *cert. denied sub nom. Brennan v. Hobson*, 470 U.S. 1084 (1985).

Use of balancing tests to determine whether the compelled disclosure of a membership lists is necessary is well established in the First Amendment context. In *NAACP v. Alabama supra* 357 U.S. at 463, the Supreme Court stated that disclosure of membership lists by the defendant NAACP and the accompanying abridgement of its freedom of association would be appropriate only if the state could demonstrate a compelling interest in disclosure.

A balancing test was also used by the Court in *Federal Election Comm. v. National Right to Work Committee*, 459 U.S. 157 (1982), where the Court held that the defendant, the National Right to Work Legal Defense and Educational Fund, could be forced to disclose its contributors only after a detailed inquiry into the other party's need for the information. A balancing approach has been adopted in cases very similar to this one, where the plaintiff has asserted a First Amendment privilege and refused to make discovery.

In *Familias Unidas v. Briscoe*, 544 F.2d 182 (5th Cir. 1976), the plaintiff, an association formed to advance the educational and social status of Mexican-Americans, challenged the constitutionality of a state educational code provision that would have required it to disclose its membership. The association refused to answer three interrogatories from the school board that asked for the names of its members. The District Court, which adopted an automatic waiver

theory, ordered disclosure and then dismissed when the association refused to comply with the

order. The Fifth Circuit reversed, stating:

> To require them to forfeit that which they seek to protect in order that they might receive federal assurance that they were indeed entitled to it initially would be an abdication by the federal court of not only its federal stature, but its judicial robes as well.
>
> The language of *N.A.A.C.P. v. Alabama* is much too strong to permit this result. . . . we cannot agree with the trial court's distinction of that case on the basis that the N.A.A.C.P. was the defendant there. . . .

*Id*. at 192.

The court then balanced the plaintiff's interest in protecting the names of the association's

members against the state's need for the information and ruled against disclosure.  However, the

court concluded that the litigant seeking protection need not prove to a certainty that its First

Amendment rights will be chilled by disclosure. It need only show that there is *some probability*

that disclosure will lead to reprisal or harassment.  (emphasis added).

## D.

## The Instant Dispute

Again, it should be noted that ADM 3700 was repealed on July 26, 2005, and replaced

with OMS 3700.  As a result, plaintiffs seek leave to amend their complaint to allege the

unconstitutionality of several provisions in ADM 3700.  *Fed. R. Civ. P.* 15.

The defendants argue that the plaintiffs' claims are "unripe" and because there is no

"pending or imminent request for such information."   **Def. Motion to Dismiss at p. 1-2**

Defendants also claim the office charged with this investigation no longer has jurisdiction over

FAMS employees.  *Id.*  The defendants then assert there is "no basis in law for attempting to

immunize FAMA from all future investigative scrutiny by preventing future inquiries about the

14

organization and its officers.  **Def. Motion to Dismiss at p. 2**

The defendants position is that somehow OMS 3700 cured all the defects contained within ADM 3700.  It did not.  Indeed, there are several areas which the plaintiffs will challenge under an overbreadth and vagueness theory.  Moreover, there are provisions in the new directive which  forbid or compel speech.  The restrictions under OMS 3700, like the previous directive, overly restricts the plaintiffs' First Amendment rights and do nothing to ease the chilling effect on speech for employees and employees who would be whistleblowers.  Indeed, OMS 3700 leaves plaintiffs and its members in the untenable position of not knowing whether they have first amendment rights to participate in public discussions that could improve air safety.  As a result, the plaintiffs will be able to allege that OMS 3700 simply repackages the original unconstitutional restrictions in different language.   Thus, leave to amend the complaint would be appropriate.

Leave to amend should ordinarily be freely granted to afford a plaintiff "an opportunity to test his claim on the merits," and a refusal to allow an amendment must be based on a valid ground. *Foman v. Davis*, 371 U.S. 178 (1963);  *Gaubert v. Federal Home Loan Bank Bd.*, 863 F.2d 59, 69 (D.C. Cir. 1988).  In much of Part I of the Defendant's argument, they claim that with the revocation of ADM 3700, the new policy OMS 3700 will meet constitutional muster. However, this is a motion to dismiss based on the sufficiency of this complaint and not one for summary judgment.  The only inquiry is whether the plaintiffs have set forth sufficient facts to demonstrate that they are entitled to relief.  Because ADM 3700 has since been repealed, it would be appropriate for the court to allow the plaintiffs to amend the instant complaint.

Contrary to the government's position, policemen, like teachers and lawyers, are not

relegated to a watered-down version of constitutional rights. *Garrity v. New Jersey* 385 U.S. 493 (1967). Additionally, the Supreme Court and the federal courts have recognized limits on investigative interviews of public employees. In this regard, police officers are only required to answer questions narrowly, directly and specifically about their performance as a police officers. *Gardner v. Broderick* 392 U.S. 273 (1968). They must be compelled to answer questions in an administrative investigation under threat of removal and further apprised that their failure to answer can result in their removal. *Weston v. HUD*, 724 F.2d 943 (Fed. Cir.1983); *Kalkines v. United States*, 200 Ct. Cl. 570, 473 F.2d 1391, 1393 (1973). Their answers cannot be used against them in a criminal proceeding and an agency cannot force an employee to waive a constitutional right under threat of disciplinary action. *Id.*

In addition, public employees subject themselves to removal if they lie during an internal investigation. *LaChance v. Erickson*, 522 U.S. 262 (1998). And while the failure to answer *job-related* questions can result in removal from the federal service, non-job related questions can result in claims for invasion of privacy or violation of association claims. *See e.g. Fraternal Order of Police, Lodge #5 v. City of Philadelphia*, 812 F.2d 105 (3rd Cir. 1987)(compelled disclosure of all organizations police officers belonged to seriously violated police officers rights to privacy); *Wilson v. Taylor*, 733 F.2d 1539 (11th Cir. 1984)(police officer has protected constitutional interest in off-duty dating of known felon's daughter).

In a case directly on point, the district court denied the government's motion to dismiss as a result of an internal investigation and an investigation into an employee organization. In *Fraternal Order of Police, D.C. v. Rubin*, 26 F.Supp.2d 133 (D.D.C. 1998), the United States Secret Service initiated an internal investigation of certain employees after the disclosure of a

16

videotape wherein the deputy chief of the Uniformed Division told police officers not to enforce the laws of the District of Columbia.  The Secret Service's inspections division called in uniformed division officers and inquired into whether the police officer personally disclosed the videotape to the media.  The inspections division then order the police officer to disclose whether they were a  member of the Fraternal Order of Police, whether they attended meetings, what was discussed at those meetings, the identity of the board of directors of the organization were, where they obtained their funds, who initiated motions and what discussions the officers had during their meetings.  The evidence further demonstrated that when officers attended meetings they were off-duty.

The inspections division then ordered the police not to speak with anyone about the investigation including those who were unrelated and had no connection with the investigation. They threatened disciplinary action up to and including removal if the officers violated their directive.  The government moved to dismiss raising essentially the same arguments put forth by the defendants in the case at bar.

The FOP sued the Secret Service alleging that the defendants' investigation did not advance any legitimate goal and that it was designed to discourage and prevent officers from associating with the FOP, attending its meetings and furthering its goals in violation of the First Amendment.  *Id.* at 141.  The complaint also alleged that the defendants' actions inhibited the plaintiffs from candid discussions with their counsel and from meaningful access to the courts in further violation of the plaintiffs' First Amendment rights.  *Id.*  The complaint further alleged that the defendants' investigation inhibited the plaintiffs from conferring with legal counsel and discussing matters among themselves.  *Id.*  The government moved to dismiss the complaint.

In rejecting the defendant's motion to dismiss, the court found that the plaintiffs had standing to sue because they had showed a judicially cognizable interest which was concrete and particularized and was actual and imminent. *Id.* at 141-42. In this regard, the district court found that the alleged threat of discipline up to an including dismissal directed at the plaintiffs is a concrete, particularized and imminent harm sufficient to satisfy this requirement. *Id.* at 142 (citations omitted). Thus, the court found that an implicit and expressed threat to discipline was sufficient to create a judicially cognizable chilling effect on the plaintiffs' First Amendment rights. *Id.* Thus, the court concluded, the FOP had standing to challenge the threats allegedly made by the defendants in connection with the investigation. *Id.*

The district court's next inquiry focused on the release of the videotape to the media. In that regard, the court found that the release of the tape addressed a matter of public concern. *Id.* The court opined that the FOP demonstrated a judicially cognizable First Amendment interest because the videotape concerned a matter of public concern. As a consequence, the burden then shifted to the government to show that the First Amendment interest was outweighed by that expression's necessary impact on the actual operation of the government. *Id.* The government could not meet its burden in demonstrating that the release of the videotape had a necessary impact on the actual operation of the government. *Id.*

The district court concluded that FOP had standing and had stated a judicially cognizable claim as it applied to the defendants compelling of the FOP membership information and member discussions which took place at the FOP. *Id.* at 143. The district court also concluded the FOP stated a judicially cognizable claim concerning the agency's threat of discipline up to dismissal. *Id.* at 144. The court found this restriction was a "content based restriction on

18

speech" that was subject to the "most exacting" First Amendment. *Id.* The court held the FOP stated a judicially cognizable First Amendment interest in forbidden speech sufficient to support standing. *Id.*

In the case at bar, the plaintiffs have also demonstrated that they have standing to sue and a judicially cognizable First Amendment interest. First, the internal investigation involved the alleged release of the information to the press which involved surveillance quota system imposed upon federal air marshals, hotel stay policy and allegations of fraud, waste and mismanagement within the agency. **Comp. ¶¶ 24-25**. These stories appeared extensively on television, the internet and in newspapers throughout the country. *Id*. The complaint further alleged that the actions of the defendants chilled the protected speech and associational rights of the plaintiffs. **Comp. ¶26.** Accordingly, the complaint involves a matter of public concern.

The complaint also demonstrates a judicially cognizable claim as it pertains to compelling the plaintiffs' speech about FAMA. **Comp. ¶42.** Indeed, the defendants have yet to affirmatively assert that they will not compel speech about FAMA. There has been no showing by the defendants at this juncture that compelled disclosure of FAMA membership was justified or had a substantial relation to the government interest and the information sought to be disclosed. *See FOP Lodge 5, supra.*

The threat of discipline and criminal action as set forth in the defendants' notice of rights and obligations also demonstrates a judicially cognizable claim. Even assuming *arguendo* that the ICE Office of Professional Responsibility will no longer investigate the plaintiffs, the Notice of Rights and Obligations is a Federal Air Marshal form. It is in widespread use by the defendants. Moreover, as recently as November 17, 2005, the ICE Office of Professional

Responsibility was again investigating a FAMA director and asking questions about the organization. Plaintiff Babb was ordered into several subsequent interviews after the ICE Office of Professional Responsibility supposedly lost jurisdiction of the Federal Air Marshal Service. Both of these factor demonstrate a judicially cognizable claim.

As to the government's claims that its interest in investigating its employees materially advances several important governmental interests, that claim as it applies to the facts of this case simply does not outweigh the plaintiffs associational and speech rights in this action. Indeed, the cases cited by the defendant in support of its proposition that dismissal of a plaintiff's claim under Rule 12(b)(6) was proper, do not stand for the proposition cited by the defendants.

First, *Hall v. Ford*, 856 F.2d 255 (D.C. Cir. 1988), involved a high-level official. In that regard, the court of appeals concluded that the plaintiff's position fell into a band of fragile relationships required for job security loyalty at the expense of unfettered speech. As a result, the government interest in having the plaintiff vigorously carry out its policies outweighed his First Amendment rights. *Id.* at 265.

Similarly*, Weisbuch v. County of Los Angeles*, 119 F.3d 778 (9th Cir. 1996), provides no support for the defendants' governmental interest argument. In that case, the plaintiff was policy-making official. The court of appeals initially noted that factual development concerning the balancing of interests is necessary and the balancing cannot generally occur on a 12(b)(6) motion. *Id.* at 783. The plaintiff's case was dismissed not based on a balancing of the government's interest but because the plaintiff never went public with his complaints, because of his high-ranking position and finally because he had not been punished for threatening to go public with his disagreement. *Id.* at 784-85.

In *Black v. City of Auburn*, 857 F.Supp. 1540 (M.D. Ala. 1994), the limitation placed on Black concerning his speech was narrowly tailored and applied to *only* those parties who were part of the investigation. *Los Angeles Police Protective League v. Gates*, 579 F.Supp. 36 (C.D. Cal. 1984), (*LAPPL)* also applied only to those witnesses in the investigation.  The admonitions directed at the plaintiffs in this case is much more expansive than those in *Black and LAPPL*.  It applies to "any other person."  Thus, the plaintiffs run afoul of the directive and subject themselves to disciplinary action even as to those individuals completely unconnected with the investigation. The purported interests asserted by the defendants are non-existent.  The plaintiffs have established a judicially cognizable interest.

### E.

### Conclusion

The plaintiffs have established that they have a judicially cognizable interest and the threat of immediate harm, at present and in the future. The plaintiffs have alleged that they were compelled to disclose not only whether they were a member or director of the FAMA.   The plaintiffs have further alleged that the defendants have threatened the plaintiffs with disciplinary action and removal if they failed to disclose who are members of the association and other private associational information.  Assuming that these allegations are true, it may be inferred that there is a reasonable probability that the compelled disclosure would result in threats, harassment, or reprisals from the defendants against those who have released information to the media. On motion to dismiss, these alleged injuries are sufficient for a finding that the plaintiffs have alleged a judicially cognizable First Amendment interest in not being compelled to disclose the internal business of its association.  Additionally, with the rescission of ADM 3700 and the

promulgation of OMS 3700, the plaintiffs request that the Court allow the plaintiffs to amend the complaint.

Respectfully submitted,

_____    ***/s/ Stephen G. DeNigris, Esq.***
Stephen G. DeNigris, Esq,
D.C. Bar No. 440697
Suite 170 - 283
2100 M Street NW
Washington DC 20037

Office:        (703)416-1036
Fax:          (703)416-1037

Dated: December 12, 2005
        Albany, NY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

TERRY BABB, et. al.,                          )
                                              )
          Plaintiffs,                         )
                                              )          Civil Action No. 05-cv-1088 (RCL)
          v.                                  )
                                              )
MICHAEL CHERTOFF, et. al.,                    )
                                              )
          Defendants.                         )
_____)

## **O R D E R**

Upon consideration of the Defendants' Motion to Dismiss. the Plaintiffs'' Opposition to

that Motion and the Defendants' Reply and for other good cause shown, it is hereby

**ORDERED** that the Plaintiff's Motion is GRANTED / DENIED.  And it is further

**ORDERED** that Plaintiffs' Motion for Leave to Amend the Complaint is GRANTED /

DENIED.  And it is further

**ORDERED** that the plaintiff will have up to and including _____, 2006 within

which to file his Amended Complaint.


Dated: _____, 2006
          Washington, DC


                                   _____
                                   UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition to Defendants' Motion to Dismiss was sent by electronic-mail on the 12th day of December 2005 to:

Samuel C. Kaplan, Esq.
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
(202) 514-4686
Fax: (202) 616-8202
Email: samuel.kaplan@usdoj.gov

*/s/ Stephen G. DeNigris, Esq.*