UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TERRY M. BABB and FEDERAL AIR MARSHALS ASSOCIATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL CHERTOFF, Secretary, Department of Homeland Security, AND THOMAS D. QUINN, Director, Federal Air Marshal Service, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 05-1088 (RCL) |

## MEMORANDUM OPINION

This matter comes before the Court on the defendants' Motion [9] to Dismiss. Upon consideration of defendants' motion, the opposition thereto, the reply brief, the applicable law, and the entire record herein, the Court concludes that the defendants' motion will be granted. The Court agrees with defendants' contention that this Court lacks jurisdiction over Counts I and III and that plaintiffs have failed to state any claim upon which relief may be granted in Count II.

## BACKGROUND

In this case, the Federal Air Marshals Association ("FAMA")[1] and its President Terry Babb ("Babb") raise several First Amendment claims against the Federal Air Marshal Service ("FAMS") and the Department of Homeland Security ("DHS"). Babb is employed as a Civilian Air Security Specialist in the Federal Air Marshal Service. Babb brings this action as a result of

---

[1] FAMA is an organization of active-duty Federal Air Marshals and Federal Flight Deck Officers. (Compl. ¶ 6.) The goal of FAMA is to advance the professionalism, integrity, and mission effectiveness of both services without regard to political or bureaucratic agendas. (Id.)

1

injuries suffered by him during defendants' investigation into alleged employee disclosures of purported classified information to members of the media. FAMA joined on behalf of its members who were also questioned during the investigation and who were compelled to disclose non-job related information about FAMA. Plaintiffs also allege that FAMS Policy Directive ("ADM 3700") is facially unconstitutional because it impermissibly restricts the free speech rights of FAMA members.

On April 18, 2005, more than one month prior to the filing of the instant lawsuit, the Bureau of Immigration and Customs Enforcement ("ICE"), which was the supervising agency for FAMS, distributed to all ICE employees an Interim Table of Offenses and Penalties for Non-Bargaining Unit Employees[2] – a group that includes FAMS employees. (See Tsungu Decl.) The stated intent of the table was to "provide guidance to employees regarding unacceptable behavior, and the consequences for that behavior" and "to bring fairness and consistency of application of those standards to non-bargaining unit employees in all programs." Id.

Approximately three months later on July 26, 2005, the Director of FAMS sent out a memorandum to FAMS employees, titled OMS 3700, that eliminated any potential doubt that employees could speak out on matters of public concern. (Defs.' Mot, Ex. 1, Att. 2, OMS 3700.) The stated purpose of the memorandum was to "establish[] the standards of behavior required of

---

[2] The Table provides in pertinent part that:

> Nothing in this table should be interpreted as prohibiting: (1) the reporting of suspected fraud, waste, abuse, corruption, misconduct, or a substantial and specific danger to public health or safety to appropriate agency officials (see 5 U.S.C. sec. 2302); or (2) the free expression of an employee's opinions on matters of public concern in his or her private capacity, consistent with reasonable and necessary limitations on disclosures (see Part M [which addresses disclosure of classified or otherwise sensitive information]).

See id. at 25 n. 2.

all Federal Air Marshal Service (FAMS) employees." (Id. at 1.) The published amendments provided that nothing "shall be interpreted as prohibiting legally protected disclosures, including disclosures to Congress, under 5 U.S.C. § 2302 or other Whistleblower protection laws or regulations." (Id. at ¶ 7(i).) Further, the message provided that "an employee has the right to disclose any information that the employee reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, unless such disclosure is prohibited by law, valid federal regulation or executive order." (Id. at ¶ 12(f).)

Finally, it should be noted that on October 1, 2005, authority over FAMS was transferred to the Transportation Security Administration ("TSA"). TSA's employee policies also permit employees to comment on matters of public concern. (See Ex. 3, Ross Decl., TSA Employee Policy ¶¶ 4, 10, 12.)

## DISCUSSION

**A.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiffs bear the burden of establishing that the Court has jurisdiction. In turn, the Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," See Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), which includes the obligation to determine whether the plaintiffs' claims are moot. See Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994). A court may consider material other than the allegations of the complaint in determining whether it has jurisdiction, but must accept the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d

3

1249, 1253-54 (D.C. Cir. 2005).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. Conley v. Gibson, 355 U.S. 41, 45-46, (1957); Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. Kowal, 16 F.3d at 1276. The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

**B.     Plaintiffs' Motion to Amend Complaint**

On October 6, 2005 defendants filed their motion to dismiss. ADM 3700 was repealed on July 26, 2005, and replaced with OMS 3700. On December 12, 2005 plaintiffs filed a "Response in Opposition to Defendants' Motion to Dismiss and/or in the Alternative Motion to Amend the Complaint."[3] Plaintiffs' motion in the alternative to amend their complaint to challenge OMS 3700 is without merit. As an initial matter, Local Rule of Civil Procedure 15.1 requires that a motion for leave to file an amended pleading "be accompanied by an original of the proposed pleading as amended." Plaintiffs have not submitted the proposed pleading with their motion. Accordingly, plaintiffs' motion violates Local Rule 15.1. Moreover, even if

---

[3] Plaintiffs' "Response in Opposition to Defendants' Motion to Dismiss and/or in the Alternative Motion to Amend the Complaint" was not docketed as a separate motion. (See Dkt. # 16)

plaintiffs' motion was properly submitted, plaintiffs have still failed to state a claim upon which relief can be granted.

C.     **Count I: Over-breadth of ADM 3700**

Count I of plaintiffs' complaint "request[s] that this court enjoin the defendants from present and future enforcement of ADM 3700(17)."  (Compl. 8.)  According to plaintiffs, ADM 3700 (1) "portends a Federal Air Marshal against criticizing or ridiculing the Federal Air Marshal Service policy [sic] or other employee by speech, writing or expression which 'impairs the operation or efficiency of the Federal Air Marshal service,'" (2) "prohibits a Federal Air Marshal from creating or participating in unofficial Internet websites concerning the Federal Air Marshal Service, the Transportation Security Administration, or the U.S. Department of Transportation," and (3) "proscribes the release or divulgence of *any* information related to the Federal Air Marshal Service, the Transportation Security Administration or the U.S. Department of Transportation," including speech at public gatherings.  (Compl. ¶¶ 16-19.)  Defendants argue that ADM 3700 has been repealed and that plaintiffs' claim concerning ADM 3700 is therefore moot and should be dismissed pursuant to Rule 12(b)(1).  (Defs.' Mot. 6-9.)  Plaintiffs allege that "OMS 3700 simply repackages the original unconstitutional restrictions in different language."  (Pls.' Opp'n. 15.)  The Court is not persuaded by plaintiffs' argument.

"Even where litigation poses a live controversy when filed, the doctrine [of mootness] requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  <u>Clarke v. United States</u>, 915 F.2d 699, 701 (D.C. Cir. 1990).  The repeal of ADM 3700 renders moot plaintiffs' principal claim in this lawsuit.  Count I of

plaintiffs' complaint "request[s] that this court enjoin the defendants from present and future enforcement of ADM 3700(17)." (Compl. 8.) Both the April 18, 2005, Table of Offenses and Penalties and the implementation of OMS 3700 made clear that ADM 3700(17) has been repealed. (See Ex. 1, Att. 1, Att. 2, OMS 3700 ¶¶ 7(i), 12(f), 18.) As the Supreme Court in Spencer v. Kemna stated, "mootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so." 523 U.S. 1, 18 (1998). Because the old policy, ADM 3700, has been repealed, there is nothing to remedy.

Moreover, the new policy, OMS 3700, would relieve any constitutional concerns because it provides that FAMS employees may speak "about matters of public concern–including opinions about issues of public concern related to the FAMS," and also protects the right of employees to disclose violations of law and instances of gross mismanagement or danger to public safety unless prohibited by another valid law or regulation. (Defs.' Mot, Ex. 1, Att. 2, OMS 3700 ¶¶ 7(i), 12(f), 18.) The new policy also eliminated sections of the old policy that are the subject of plaintiffs' complaint, including the prohibition related to informal web-sites. (Id.; see also Compl. ¶¶ 17-19.) Furthermore, plaintiffs provide no indication that FAMS intends to return to the old policy, and FAMS is now under the jurisdiction of TSA, which has a policy that similarly protects the ability of employees to speak on matters of public concern. (See Defs.' Mot, Ex. 3, Ross Decl., TSA Employee Policy at ¶¶ 4, 10, 12.)

The Court concludes that plaintiffs' Count I claim is moot, and will dismiss it accordingly.

### D.    Count II: Freedom of Association

In Count II of their complaint, plaintiffs assert that defendants' investigation encroached

their First Amendment right of association.  They claim that "members of the defendants' Office of Professional Reponsibility compelled a statement from plaintiff Babb," that included answers to various questions about FAMA.  (Compl. ¶¶ 41-43.)  Plaintiffs assert that requiring answers to these questions "has seriously infringed on the privacy of FAMA and beliefs guaranteed by the First Amendment" and chilled the organization's ability to do business.  (Id. at ¶¶ 46-47.)  Plaintiffs request that "this court enjoin the defendants from (sic) present and future practice of compelling disclosure of FAMA information."  (Id. at 10.)  Defendants argue that plaintiffs have failed to state a valid right of association claim as a matter of law because the information that the Office of Professional Responsibility of the Bureau of Immigration and Customs Enforcement ("ICE/OPR") allegedly requested does not implicate the right of association.  The Court agrees.

     Babb and FAMA members have no constitutional right of association to resist all inquiries concerning the organization.  According to plaintiffs, OPR asked about FAMA's officers, its organizational structure, and the organization's public statements.  (Compl. ¶ 43.)  Requiring responses to these questions in no way interfered with plaintiffs' right of association.  To the contrary, the Supreme Court has made it clear that a state has a legitimate interest in obtaining information regarding an association's purpose, activities and officers.  NAACP v. State of Alabama, 357 U.S. 449, 464 (1958).

     Plaintiffs also argue that defendants could not constitutionally require FAMA to produce a list of members without compelling reasons.  (Pls.' Opp'n. 13.)  The complaint, however, does not allege that defendants have requested a list of FAMA members or FAMA internal deliberations.  (See Compl. ¶¶ 43(a)-(j).)  Instead, plaintiffs allege only that defendants have

sought basic organizational information, the identity of corporate officers, and information about public statements made by the organization and its officers.  Plaintiffs fail to explain how such requests implicate the right of association.

In addition, the information defendants requested is relevant to a variety of legitimate areas of inquiry, including questions about the disclosure of sensitive information, unauthorized use of governmental resources, and unauthorized outside employment.[4]  In fact, courts have long recognized the importance of protecting the integrity of the agency investigative process, so that an agency's power to investigate is not diminished.  FTC v. Invention Submission Corp., 1991 WL 47104, *2 (D.D.C. 1991) (Lamberth, J.) ("In evaluating relevance objections to agency investigations, a court must respect the agency's 'power of inquisition' and interpret relevance broadly.").

Accordingly, Count II shall be dismissed pursuant to Rule 12(b)(6).

**E.     Count III: Forbidden Speech**

Plaintiffs' final claim challenges OPR's alleged practice of "threaten[ing] members of FAMA with administrative and/or criminal action for discussing the nature of an OPR investigation with *anyone*." (Compl. ¶ 54.)  Plaintiffs also request that "this court enjoin the defendants from present and future enforcement of the defendants' continuing practice of threatening disciplinary and/or criminal sanctions against employees who discuss the nature of an OPR investigation with others . . . ." (Id.)  In turn, defendants argue that plaintiffs' claim should

---

[4] See FCC v. Schreiber, 381 U.S. 279, 290-92 (1965) (noting that "administrative agencies 'should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties'" and deferring to agency judgment concerning disclosure of investigatory information) (quoting FCC v. Potsville Broad. Co., 309 U.S. 134, 138 (1940)).

be dismissed because the claim is moot.[5]  (Defs.' Mot. 17-25.)  The Court agrees with defendants.

Plaintiffs lack standing to challenge the alleged practice of instructing an OPR interviewee not to discuss the nature of the interview with others.  To establish standing, plaintiffs must show that they face a "real and immediate" threat of harm from the policy.  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983).  In this case, there would have to be a real and immediate threat that (1) they will be interviewed as part of an OPR investigation, and (2) that they will be prevented from discussing the investigation with individuals with whom, absent OPR restrictions, they would otherwise have discussed the investigation, and (3) that they would be harmed by that policy.  Plaintiffs have failed to allege or establish that Babb or FAMA's members confront an immediate threat of such an investigation, and nothing would prevent the party from bringing a legal challenge to the policy if the threat were to materialize.  Moreover, because authority over FAMS has been transferred to TSA, the ICE/OPR no longer has investigative jurisdiction over Babb and FAMS employees.  In fact, TSA's internal investigative office does not even use the investigative warning employed by ICE/OPR.  (<u>See</u> Hampton Decl. ¶¶ 3-7.)  Therefore, plaintiffs' challenge to the investigative warning policy used by ICE/OPR is moot and will be dismissed.

## CONCLUSION

For the reasons stated herein, the Court will grant the defendants' motion to dismiss the

---

[5] Defendant also argues that plaintiffs incorrectly state that defendants' policy prohibits Mr. Babb from "discussing the nature of an OPR investigation with *anyone*." (Compl. ¶ 54.)  In fact, the admonitions given to Babb specifically permitted him to discuss the nature of the interview with "private legal counsel."  (<u>See</u> Defs.' Mot., Ex. 2, Att. 3, Disclosure Warning for Non-Bargaining Unit Employees ("Disclosure Warning").))

plaintiffs' claims.

A separate Order will issue this date.

Signed by Royce C. Lamberth, United States District Judge, May 16, 2006.